# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| DANIEL PAUL CAMPBELL, (TDCJ-CID #1137358) | § § § | |
| Plaintiff, | § § | |
| vs. | § § | CIVIL ACTION H-03-3625 |
| RICK DAVIS, *et al.,* | § § § | |
| Defendants. | § | |

## MEMORANDUM AND OPINION

Daniel Paul Campbell, an inmate of the Texas Department of Criminal Justice - Correctional Institutions Division, sued in August 2003, alleging improper conditions of probation and improper revocation of his probation. Campbell, proceeding *pro se* and *in forma pauperis*, alleged that in September 2001, after he pleaded guilty to a felony offense of "bail bond jumping," Judge Rick Davis placed him on probation and ordered him to attend classes for sex offenders, despite the fact that he had never been convicted of a sex offense. Campbell claims that the imposition of these terms of probation "ruined his life completely." He sued Judge Rick Davis, the judge who imposed the terms; Bill Turner, District Attorney; and probation officers Steven Morris and Dawn Sustaita. In a previous Memorandum and Opinion, this court dismissed all of Campbell's claims except those against his probation officers based on the condition of his probation. The probation officers have now moved for summary judgment as to the remaining claims. Campbell has filed no response. Based on the

pleadings, the motion, the summary judgment record, and the applicable law, this court grants the motion for summary judgment and, by separate order, enters final judgment. The reasons for these rulings are set out below.

**I.    Background**

On September 17, 2001, Campbell pleaded guilty and was convicted of bail bond jumping in Brazos County, Texas. The transcript of the rearraignment, made a part of the summary judgment record, shows that Campbell had been indicted for aggravated sexual assault on a child. Judge Davis recalled the case because it had previously come before him. The case was memorable because the alleged victim was fourteen and Campbell had ended up marrying her. The plea agreement resulted in the dismissal of the aggravated sexual assault charge and a guilty plea on a new charge of bail jumping. Judge Davis accepted the plea and imposed a ten-year prison sentence, but allowed five years probation. As a condition of probation, the judge required Campbell to undergo an evaluation to determine whether sex-offender conditions should be imposed. The conditions of probation in the judgment included that Campbell "submit to a psychiatric/psychological/substance abuse evaluation, screening, and/or treatment at the direction of [his] supervision officer."

Probation Officer Sustaita was initially assigned to Campbell's case. Campbell was evaluated by a psychologist on October 29, 2001. The psychologist, a registered sexual offender treatment provider, highly recommended that Campbell be subjected to sex-offender treatment and restrictions, including that he participate in group therapy for sex offenders and take polygraph examinations. Sustaita filed a memorandum with the court recommending that

2

Campbell's probation conditions be modified as recommended in the evaluation. The State filed a written motion to modify the conditions of probation to include counseling for sex offenders, polygraph examinations, a prohibition on pornography, and a restriction on computer use and on communication with persons 17 years of age or younger. Campbell waived his right to a hearing on that motion. The written waiver is part of the summary judgment evidence. (Docket Entry No. 16, Ex. A, p. 36).

In March 2002, Campbell's case was transferred, at his request, to Milam County. At that time, Steve Morris became Campbell's supervising officer and Sustaita's involvement ceased. Morris supervised Campbell's compliance with the preexisting conditions of his probation.

Campbell asserts that he should not have been required to attend sex-offender classes because he was never convicted of a sexual offense. Campbell complains that his probation conditions improperly required him to admit he was a sex offender at each class; abstain from pornographic materials; not own a computer in the house; submit to lie detector tests; remain in the home unless he had a travel plan; and avoid contact with minors. Campbell complains that his probation officers threatened to have the probation revoked if he did not comply.

In 2001, the State filed a motion to revoke Campbell's community supervision. Campbell entered a plea of not true to the allegations. After a hearing, the trial court found the allegations in the State's motion to be true and sentenced Campbell to a ten-year prison

3

term. *Campbell v. State,* No. 01-02-01317-CR, 2004 WL 909180 (Tex. App. -- Houston [1st Dist.] 2004, no pet.) (not designated for publication).

Campbell seeks $100 million in damages for mental anguish, slander, malicious prosecution, neglect, and civil rights violations.

**II.    Analysis**

Campbell complains that the probation officers improperly modified and implemented the conditions of his probation to include registration as a sex offender and counseling for sex offenders, when Campbell had no history of sex-related offenses. In *Coleman v. Dretke*, 395 F.3d 216 (5th Cir. 2004), the Fifth Circuit addressed a similar argument in a habeas case. A state prisoner who had been indicted for the felony offense of aggravated sexual assault of a child and indecency with a child by contact, but who had been convicted of only misdemeanor assault, challenged the revocation of his parole for his failure to enroll or participate in sex offender therapy. Coleman asserted that the State had violated his due process rights by imposing, without advance notice or a hearing, two additional conditions to his release on parole – sex offender registration and sex offender therapy. Relying on *Vitek v. Jones*, 445 U.S. 480, 100 S. Ct. 1254, 63 L.Ed.2d 552 (1980), the Fifth Circuit held that TDCJ was required to provide procedural due process protection before imposing sex offender registration and therapy as additional conditions to the release on parole or mandatory supervision of a prisoner who had never been convicted of a sex crime. In so holding, the circuit noted that, as in *Vitek*, Texas prisoners have a liberty interest in freedom from the stigmatizing sex offender classification and conditions, and that "Texas's sex offender therapy

program was 'qualitatively different' from other conditions which may attend an inmate's release." *Id*.

The present case differs from *Coleman* in one important aspect. It seeks monetary and injunctive relief under 42 U.S.C. § 1983, instead of habeas corpus relief under 28 U.S.C. § 2254. As this court noted in the previous Memorandum and Opinion, *Heck v. Humphrey*, 512 U.S. 477, 486-87, 114 S. Ct. 2364, 2372, 129 L.Ed.2d 383 (1994), requires the dismissal of a section 1983 complaint seeking money damages when the civil rights action, if successful, would necessarily imply the invalidity of plaintiff's sentence, unless the plaintiff demonstrates that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus under 28 U.S.C. §§ 2254. 512 U.S. at 486-87, 114 S. Ct. at 2372. The crux of Campbell's complaint is that he was improperly classified as a sex offender with additional conditions to his release on parole, which ultimately resulted in his parole revocation. A ruling in Campbell's favor would necessarily implicate the validity of his parole revocation. No federal court has invalidated Campbell's confinement resulting from the parole revocation hearing, precluding his section 1983 damages claim. *See, e.g., Fischer v. Ownes*, 2005 WL 544221, *2 (N.D.Tex.) to 2005 WL 544221, *3 (N.D.Tex.).

Moreover, the record in this case does reveal procedural protections lacking in the *Coleman* case. Judge Davis ordered Campbell evaluated to determine whether he should be placed on conditions of probation appropriate for sex offenders. It was only after the

evaluation, which strongly recommended the imposition of such conditions, that the State filed a motion seeking to modify the conditions of his probation. Campbell waived a hearing on the motion to modify and agreed to the modifications. Campbell received notice and waived the hearing. The record shows no basis to find the procedural infirmity present in the *Coleman* case.

The record also precludes a finding that the conditions of Campbell's probation were overbroad or reasonably related to the offense or characteristics of the defendant and requires a finding that the defendants are entitled to qualified immunity. The record reveals that the conditions of the probation resulted from a plea bargain and an evaluation by a psychologist trained as a sexual offender treatment provider. It was only after the evaluation recommending the modification of the conditions of probation to include sex offender treatment and precautionary measures that the State moved to modify the conditions of probation to include the conditions Campbell challenges. Campbell received notice of the hearing and waived it, agreeing to the modifications.

In *Harlow v. Fitzgerald*, the Supreme Court established that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed.2d 396 (1982). The Court subsequently clarified in *Siegert v. Gilley*, 500 U.S. 226, 232-34, 111 S. Ct. 1789, 114 L. Ed.2d 277 (1991), that courts evaluating section 1983 claims based on allegedly unconstitutional conduct by state actors should conduct a two-prong

inquiry to determine whether the state actors are entitled to qualified immunity. "[T]he first inquiry must be whether a constitutional right would have been violated on the facts alleged." *Saucier v. Katz*, 533 U.S. 194, 200, 121 S. Ct. 2151, 150 L. Ed.2d 272 (2001). "[I]f a violation could be made out on a favorable view of the parties' submissions, the next sequential step is to ask whether the right was clearly established." *Id.* at 201, 121 S. Ct. 2151. Ultimately, a state actor is entitled to qualified immunity if his or her conduct was objectively reasonable in light of the legal rules that were clearly established at the time of his or her actions. *See Wilson v. Layne*, 526 U.S. 603, 614, 119 S. Ct. 1692, 143 L. Ed.2d 818 (1999).

When a defendant invokes qualified immunity, the burden is on the plaintiff to demonstrate the inapplicability of the defense. *See Bazan ex rel. Bazan v. Hidalgo County*, 246 F.3d 481, 489 (5th Cir. 2001). Because qualified immunity constitutes an "immunity from suit rather than a mere defense to liability," *Mitchell v. Forsyth*, 472 U.S. 511, 526 105 S. Ct. 2806, 86 L. Ed.2d 411 (1985), the defense is intended to give government officials a right not merely to avoid standing trial, but also to avoid the burdens of "such pretrial matters as discovery . . . as '[i]nquiries of this kind can be peculiarly disruptive of effective government.'" *Id.* (quoting *Harlow,* 457 U.S. at 817, 102 S. Ct. 2727) (alterations in original). "On summary judgment . . . the plaintiff can no longer rest on the pleadings . . . and the court looks to the evidence before it (in the light most favorable to the plaintiff) when conducting the *Harlow* inquiry." *Id.*

The undisputed evidence in the summary judgment record shows that both probation officers are entitled to qualified immunity from personal liability. They acted reasonably in light of the clearly-established legal rules then in effect.

## VI.  Conclusion

The claims filed by Daniel Paul Campbell (TDCJ-CID Inmate #1137358) against probation officers Steven Morris and Dawn Sustaita based on the revocation of his probation do not state a section 1983 cause of action and were earlier dismissed. The claims based on allegedly improper conditions of probation are now dismissed on summary judgment.

SIGNED on June 1, 2005, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge